1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELLIOTT LAMONT ROGERS,

11            Petitioner,              No. CIV S-05-1395 DAD P

12      vs.

13   MARK SHEPHERD,

14            Respondent.             <u>ORDER</u>

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an amended petition for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on June 27, 2001, in the Butte County Superior Court on charges of robbery

19   and possession of a firearm by a felon.  He seeks relief on the grounds that: (1) his trial and

20   appellate counsel rendered ineffective assistance; (2) the parole search of his apartment violated

21   his rights under the Fourth Amendment; (3) the prosecutor at his trial committed misconduct;

22   and (4) his right to an impartial jury was violated because the jury did not represent a cross-

23   section of the community.  Petitioner has also filed separate requests for an evidentiary hearing

24   and for leave to conduct discovery.  Upon careful consideration of the record and the applicable

25   law, the undersigned will deny petitioner's application for habeas corpus relief as well as his

26   requests for an evidentiary hearing and for leave to conduct discovery.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Elliott Lamont Rogers of second degree robbery (Pen.Code, § 211-count 1)[2] with use of a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)) and of possession of a firearm by a convicted felon (§ 12021, subd. (a)(1) – count 2).  In a court trial, defendant was found to have three prior serious felony convictions.  (§§ 667, subds.(a) & (b)-(i), 1170.12.)

Sentenced to state prison for 64 years to life, defendant appeals, contending (1) the prosecutor committed prejudicial misconduct, (2) he received ineffective assistance of counsel, (3) the trial court erred by failing to strike one of the serious prior felony conviction findings, (4) remand for resentencing is required because the record shows the court was unaware of its sentencing discretion, and (5) that under proportionality review, the sentence constitutes cruel and unusual punishment. We shall affirm the judgment.

## FACTS

On November 24, 1999, about 9:15 a.m., Artina Bratcher arrived for work at Check X-Change in Chico.  She entered, locked the door behind her, and prepared for work, which included putting about $3,000 in her teller drawer.  At 9:30 a.m., Bratcher opened the door; a customer and a second person, a black man whom Bratcher identified in court as defendant, entered.

Defendant, who was dressed in dark clothing, pointed a small handgun at Bratcher and ordered her to take him to the teller area. As they walked to the teller area, defendant donned a "Scream" mask (from the movie of the same name).  Defendant handed Bratcher a small black duffel bag and told her to put the money from her drawer into the bag, which she did.  After checking the other teller drawer for money, defendant ordered Bratcher and the customer to lie face down on the floor.  They complied and defendant left.  Bratcher watched as defendant entered a small

---

[1]  The following summary is drawn from the May 16, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), designated as respondent's Lodged Document No. 4, at pgs 1-5.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). "Clear and convincing evidence " within the meaning of § 2254(e) "requires greater proof than preponderance of the evidence" and must produce "an abiding conviction" that the factual contentions being advanced are "highly probable." Cooper v. Brown, 510 F.3d 870, 919 (9th Cir. 2007) (quoting Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir. 2004)).  Petitioner has not overcome the presumption with respect to the underlying events.  The court will therefore rely on the state court's recitation of the facts.

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

maroon or burgundy vehicle and drove off.  Bratcher called 911 and reported the robbery.

Marie Lenihan worked a few doors down from Check X-Change. On the morning of the robbery she saw a black man, dressed in black and carrying a black bag, run from Check X-Change and get into a small or medium maroon car.  Later that morning, the police took Lenihan to where defendant was being detained.  She was 70 to 80 percent sure defendant was the person she had seen fleeing Check X-Change.

Sara Cope, the assistant manager of Check X-Change, identified defendant as the person she saw outside Check X-Change the morning of November 23, the day before the robbery.  It was Cope's custom to clean the counter tops and door handles when closing.

It was later learned that $3,005 had been taken in the robbery.  The bill denominations were eight $100 bills, thirteen $50 bills, fifty-two $20 bills, thirty $10 bills, thirty-eight $5 bills, and twenty-five $1 bills.  Some of the bills were wrapped in rubber bands.

About 10:15 a.m., California Highway Patrol Officer Chris Nicodemus, who had a description of the robber and his vehicle, stopped a maroon-colored Nissan driven by defendant on Highway 99.  Defendant was wearing a running suit with a blue nylon jacket, and he identified himself as "Michael [M]."  Nicodemus saw two wads of cash, held together by rubber bands, in one of the pockets of defendant's jacket.  The cash was seized and, except for two fewer $10 bills and five fewer $1 bills, the denominations of the cash matched exactly the denominations of the bills taken in the Check X-Change robbery.  A search of the car revealed one more $5 bill and three $1 bills.

Bratcher was brought to the scene of the detention, and although she couldn't positively identify defendant, she believed he was the robber.  At trial Bratcher was certain defendant was the robber.

A search of the three-bedroom apartment in Chico occupied by defendant; his wife, Lisa Rogers; and Lisa's three children, including her son Michael M., disclosed Check X-Change and California identification cards in defendant's name in a drawer in the master bedroom.  In a closet was a black backpack and a pair of black pants was lying on the floor.  Also in the master bedroom was a black "belly bag" that contained a handgun and ammunition. Inside a drawer in a child's room was a Scream mask.

Bratcher identified the Scream mask and the duffel bag found in the Rogers's apartment as items used in the robbery.  A police detective testified that it took about five minutes to drive from

3

Check X-Change to Lisa's place of employment.  Defendant's fingerprint was found on the inside of the door handle (a push bar) of Check X-Change.

Lisa Rogers testified that she and defendant married in August 1999, but defendant lived in Oakland with either his sister or his ex-wife Sheena while he did odd jobs there.  Defendant had spent the Sunday night before the robbery with Lisa, and at that time he was driving Sheena's maroon Nissan Sentra.  Sheena had called Lisa that Sunday afternoon and said she had left her father's gun in the car; she asked Lisa to remove it.  Lisa put the gun in defendant's fanny pack but forgot to tell him about it.

At approximately 9:00 o'clock the morning of the robbery, defendant came to Lisa's place of employment to get money to buy a used car.  He was dressed in blue and white.  Lisa, who made $40,000 in 2000, gave defendant approximately $2,000, mostly in $20 bills.  Defendant was with Lisa about 15 minutes before he left.  Lisa had purchased the Scream mask for her son Michael.  Lisa identified the black clothing found in the closet of the apartment as belonging to defendant.

Between 9:00 and 9:30 a.m. on the day of the robbery, Lisa's coworker, Amber Silva, saw defendant meet with Lisa in the parking lot where they worked.

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

/////

4

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

(2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

error, we must decide the habeas petition by considering de novo the constitutional issues

raised.").

The court looks to the last reasoned state court decision as the basis for the state

court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

state court decision adopts or substantially incorporates the reasoning from a previous state court

decision, this court may consider both decisions to ascertain the reasoning of the last decision.

Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

habeas court independently reviews the record to determine whether habeas corpus relief is

available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle

v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not

1    reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

2    AEDPA's deferential standard does not apply and a federal habeas court must review the claim

3    de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

4    II.  Petitioner's Claims

5         A.  Ineffective Assistance of Trial Counsel

6              Petitioner raises numerous claims of ineffective assistance of trial and appellate

7    counsel.  By way of background to these claims, petitioner explains that he

8              had three (3) attorney's at three different times to represent him.
             First, the court appointed Frank Larry Willis, Jr., who represented
9              petitioner at a preliminary hearing and filed a defected [sic] motion
             to suppress evidence on March 2, 2000. (citations omitted.)
10
             Second, petitioner retained counsel Jodea Foster who also filed
11             several motion, to exclude evidence and to dismiss, based on the
             fact prior counsel Willis had provided ineffective assistance, and
12             Foster appeared at several penal code §1538.5 hearings.  (citations
             omitted.)  And thirdly, petitioner had retained trial counsel Grady
13             Davis for his actual jury trial.

14   (Points and Authorities attached to Am. Pet. (P&A), at 9.)  In addition, petitioner had counsel on

15   appeal.  Petitioner's ineffective assistance of counsel claims are directed at the actions of his

16   three pre-trial and trial attorneys and his appellate counsel.

17              Petitioner raised his ineffective assistance of counsel claims, as well as several

18   claims that had been raised on appeal, in a petition for a writ of habeas corpus filed in the Butte

19   County Superior Court.  (Resp't's Lodged Doc. 7.)  The Superior Court denied the petition by

20   checking boxes on a form order indicating that petitioner's allegations were too "vague,

21   unsupported, and conclusory" to permit "intelligent consideration," and that "issues resolved

22   on appeal cannot be reconsidered on habeas corpus."  (Resp't's Lodged Doc. 8.)  Petitioner

23   raised his ineffective assistance of counsel claims again in a petition for a writ of habeas corpus

24   filed in the California Court of Appeal for the Third Appellate District.  (Resp't's Lodged Doc.

25   9.)  The California Court of Appeal summarily denied that petition.  (Resp't's Lodged Doc. 10.)

26   Petitioner raised the claims again in two petitions for a writ of habeas corpus filed with the

6

1  California Supreme Court.  (Resp't's Lodged Docs. 11, 12, 13.)  The California Supreme Court

2  summarily rejected those petitions.  (Resp't's Lodged Doc. 14.)

3        Under these circumstances, this court analyzes the Butte County Superior Court's

4  decision as the relevant state-court determination because the California Supreme Court and the

5  state appellate court denied petitioner's petitions for a writ of habeas corpus without opinion.

6  Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.

7  2002) (the habeas court must review the "last reasoned decision" by a state court); Shackleford v.

8  Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (same).  It appears that the Superior Court did

9  not reach the merits of petitioner's claims of ineffective assistance of counsel, but rejected them

10  on the grounds that they were too conclusory "to allow for intelligent consideration."  (Resp't's

11  Lodged Doc. 8.)  Because the Superior Court did not reach the merits of these claims, this court

12  will evaluate the claims de novo.  Nulph, 333 F.3d at 1056.

13        1.  Applicable Legal Standards

14        The Sixth Amendment guarantees the effective assistance of counsel.  The United

15  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

16  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

17  counsel, a petitioner must first show that, considering all the circumstances, counsel's

18  performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a

19  petitioner identifies the acts or omissions that are alleged not to have been the result of

20  reasonable professional judgment, the court must determine whether, in light of all the

21  circumstances, the identified acts or omissions were outside the wide range of professionally

22  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

23  petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

24  466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

25  counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

26  694.  A reasonable probability is "a probability sufficient to undermine confidence in the

7

1   outcome." Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

2   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

3   deficient before examining the prejudice suffered by the defendant as a result of the alleged

4   deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

5   sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

6   (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

7           In assessing an ineffective assistance of counsel claim "[t]here is a strong

8   presumption that counsel's performance falls within the 'wide range of professional assistance.'"

9   Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

10  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

11  all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

12  Strickland, 466 U.S. at 689).

13          2.  Failure of Attorney Willis to Call Witnesses at the Motion to Suppress Hearing

14  (claim one)

15          Petitioner alleges that the police search of his wife's apartment in Chico was

16  unlawful.  He claims that he did not reside with his wife and was not listed on the apartment

17  lease and that, therefore, the search could not be justified as a valid search of the residence of a

18  parolee.  (P&A at 19-23.)  Petitioner asserts that he was actually paroled to the residence of his

19  former wife, Sheena Moore (Rogers), and "this had been petitioner's address for 18 months."

20  (Id. at 21.)

21          The state court record reflects that on March 2, 2000, petitioner's then-counsel

22  Willis filed a motion to suppress evidence.  (Clerk's Transcript on Appeal (CT) at 10-15.)  The

23  motion indicated that counsel was challenging the search of petitioner's wife's apartment in

24  Chico, petitioner's detention, petitioner's arrest, and the vehicle stop and subsequent search of

25  petitioner's vehicle.  (Id.)  A hearing was held on that motion in the Butte County Superior Court

26  on May 4, 2000.  (Id. at 22, et seq.)  At the hearing, attorney Willis called Sheena Moore as a

witness.  (Id. at 94-97.)  Ms. Moore testified that she loaned petitioner her vehicle and gave him

approximately $2,000 to buy a car just prior to the time petitioner was detained for the robbery.

(Id. at 94-97.)  She also testified that petitioner did not visit her very often, but that he was

staying at her apartment because he "didn't have a place to stay" at that time.  (Id. at 102.)  At the

end of the hearing, attorney Willis informed the trial court that his motion to suppress was

limited to the search of the Chico apartment.  (Id. at 111-14.)  In this regard, defense counsel

stated that he had "no legal basis to object to either the search of [petitioner's] person or vehicle

he was driving."  (Id. at 111.)  Counsel requested the opportunity to file supplemental points and

authorities in support of his motion to suppress.  (Id. at 111-14.)  Although the trial judge granted

this request, a supplemental brief was not filed.  (Id.)

Subsequently, petitioner retained new counsel, Jodea Foster, who filed another

motion to suppress evidence.  That motion sought to suppress: (1) evidence seized from

petitioner's person and from the Chico apartment; (2) all statements made by petitioner

subsequent to his arrest; and (3) evidence that resulted from an "in-field show-up."  (Id. at 127-

46.)  Attorney Foster also filed a subpoena duces tecum seeking rental applications under the

name of Lisa Elliott (Rogers), to establish that petitioner did not reside with Ms. Rogers.  (Id. at

171-72.)

A hearing was held on attorney Foster's suppression motion on September 14,

2000.  (Reporter's Transcript on Appeal (RT) at 1, et seq.)  At the beginning of the hearing, the

parties and the trial judge discussed whether petitioner could present additional evidence relevant

to the search of Lisa Roger's Chico apartment.  (Id. at 1.)  Counsel Foster expressed his

understanding that he was barred from presenting additional evidence "as to any issue that Mr.

Willis' motion had raised."  (Id. at 3.)  The trial court agreed that "the state of the law is we don't

/////

/////

/////

do any new evidence on 1538."[3]  (Id. at 4.)  Accordingly, the judge declined to accept any new

evidence on the legality of the search at the Chico apartment.  (See CT at 181.)  After hearing

argument on petitioner's challenges to the traffic stop and to the search of the Chico apartment,

the trial court  ruled on both of those issues separately, rejecting both challenges.  (RT at 14-31.)

On September 19, 2000, attorney Foster filed a motion to dismiss the amended

information on the grounds, among others, that attorney Willis "did not provide effective

representation when he failed to investigate and offer into evidence relevant documents and

testimony on the issue of the search of 57B Cobblestone Drive, Chico, California."  (CT at 176-

77.)  Specifically, in the motion the defense alleged:

> Had a proper investigation been done, the following would have been discovered: the apartment manager does not remember telling the officers that Lisa Elliott changed her name to Lisa Elliott Rogers and does not believe that she did since the application and rental contract for 57B Cobblestone are in the name Lisa Elliott in both the printed and signed portions of each document (no reason for the apartment manager to believe Lisa was using the last name Rogers); the apartment manager remembers the officers looking over the application and rental contract and believes it was before they searched; on the application for 57B Cobblestone, which was dated April 4, 1999, or seven months before the robbery at issue, defendant was listed as one of the proposed occupants; defendant is not named as an occupant on the rental agreement, dated April 30, 1999, and defendant did not sign that agreement; per the apartment manager, all adults living in the apartment would have been listed as an occupant and required to sign the rental agreement

---

[3]  California Penal Code § 1538.5 provides the grounds upon which a criminal defendant may move to suppress evidence obtained as a result of a search or seizure.  Section 1538.5(i) provides, in pertinent part:

> If the offense was initiated by indictment or if the offense was initiated by complaint and no motion (to suppress) was made at the preliminary hearing, the defendant shall have the right to fully litigate the validity of a search or seizure on the basis of the evidence presented at a special hearing.  If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, *evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence that could not reasonably have been presented at the preliminary hearing,* except that the people may recall witnesses who testified at the preliminary hearing.  (emphasis added.)

(indicating defendant did not reside there, despite being listed on the application as a proposed occupant); per Lisa Elliott Rogers, she did not tell the officers that she resided with her husband at 57B Cobblestone, rather, the officers telephoned her from inside 57B Cobblestone and told her that since her husband resided there with her a parole search would be conducted.

Proper cross-examination of the officers would have revealed the following:  because of the timing of the rental contract for 57B Cobblestone (April 30, 1999) the Chico address of 57E Cobblestone reported by defendant to DMV was about seven months old at the time of the robbery; at the time of his arrest, defendant was driving a vehicle registered to Sheena Moore and Sheena Moore's DMV driver's license printout listed her as Sheena Moore-Rogers; there was confusion by the officers as to what relationship defendant had with Lisa Elliott and Sheena Moore-Rogers; Sheena Moore-Rogers had an address in the Bay Area; defendant told the officers he was living in the Bay Area; the officers believed there was "some connection" between defendant and Lisa Rogers.

The investigation and cross-examination that should have been conducted reveals a very different set of facts on the issue of the reasonableness of the search of 57B Cobblestone and there is a reasonable probability that issue would have been decided differently.

(Id. at 184.)  In support of the motion to dismiss, attorney Foster also filed his own declaration, in which he stated that he interviewed Dee Thomlinson, apartment manager for 57B Cobblestone Drive, and that she related to him that petitioner had not signed the rental agreement.  (Id. at 186.)  Mr. Foster further declared that Lisa Elliott had told him that

she did not tell officers that she lived at 57B Cobblestone with defendant.  Rather, Lisa told me that the officers told her that because defendant lived at that address with her they were going to search the apartment pursuant to defendant's parole status.

(Id. at 187.)

The trial court held a hearing on petitioner's motion to dismiss on October 31, 2000.  (RT at 90-103.)  The sole issue before the court at that hearing was whether, pursuant to California Penal Code § 1538.5(i), additional evidence could be introduced with respect to petitioner's challenge to the search of Lisa Roger's Chico apartment.  Attorney Willis was called

11

by the prosecutor as a witness.  (Id. at 93.)  He testified that he spoke with Lisa Rogers and that it

was his recollection that she was petitioner's wife and that she was residing in Chico.  (Pet., Ex.

C, page marked "95.")  Mr. Willis also testified that Lisa Rogers told him prior to the hearing on

his suppression motion that petitioner did not reside in the Chico area.  Counsel knew that

petitioner was not listed on the rental agreement.  (Id. at pages marked "95" and "96.")  Mr.

Willis further testified that he did not talk to the manager of the Chico apartment complex.  (Id.

at page marked "97.")  He did not remember whether his investigator spoke to the manager or

not.  (Id.)  After hearing the testimony of Mr. Willis, The trial court issued the following ruling:

> All right, it does appear that based upon testimony of Mr. Willis,
> he had spoken with Lisa Rogers.  He had also reviewed the rental
> agreement from which one could infer the identity of the landlord
> and or the property manager.
>
> So the Court will find that the evidence proposed or presented,
> could reasonably have been presented at the preliminary hearing.
> Therefore, any request to present that evidence is denied based
> upon the language of 1538.5(i).

(Id. at page marked "100.")  The trial judge declined to rule on whether Mr. Willis had rendered

ineffective assistance at the preliminary hearing, explaining that:

> I think any claim of incompetent counsel is premature at this point
> because Mr. Rogers has not been convicted of any offense.  I'm not
> saying that it may not endure or be viable at a later point but I don't
> think it's something that – right now my sole inquiry was whether
> or not the evidence could have reasonably been presented at the
> preliminary hearing and I made that finding. . . I'm not making a
> finding on it, I just don't think it's appropriate at this point for that
> to be raised.  Later down – because for example, Mr. Rogers may
> go to trial and be found not guilty.  Then, you know, it doesn't
> matter what did or didn't happen along the way.

(Id. at pgs. marked "101" to "102.")

Petitioner claims in the instant petition that attorney Willis rendered ineffective

assistance by failing to properly investigate whether the search of the Chico apartment was a

valid parole search.  He specifically faults his counsel for failing to call three additional witnesses

in support of the motion to suppress: petitioner's parole agent Fran Bradley; Lisa Elliott Rogers,

petitioner's wife; and Dee Tomlinson, the apartment manager of the complex where Lisa Rogers resided.  (P&A at 10, 11-12.)  Petitioner suggests that Ms. Bradley could have testified that if she had been contacted by Chico Police she would have informed them of petitioner's parole status and the fact that his legal address was in Alameda County, thereby calling into question whether a proper parole search could be conducted at the Cobblestone apartment in Chico.  (Id. at 11.) Petitioner argues that Lisa Elliott Rogers would have "la[id] a foundation that she is entitled to privacy against warrantless search and seizure, she was not on parole or probation and that petitioner had no legal residence at her home."  (Id.)  Finally, he argues that the apartment manager would have

> provided crucial information upon the detective interview, and whether it was known to the officers that petitioner was not on the rental agreement prior to their search, and whether Ms. Tomlinson accompanied the detectives to the apartment since she was the manager on site and did she witness the entry into Mrs. Rogers home by the detectives, and to testify if the door was unlocked as the detective claimed it to be, and whether the phone call to Mrs. Rogers at her job site was before or after the entry of her home. Counsel could have explored the possibility of the apartment owner policy concerning search or seizures that may require a warrant, especially like in this case, where a warrantless search was executed.

(Id. at 11-12.)  Petitioner contends that "the core issue is whether the parole search was proper to a home where he did not live."  (Id. at 12.)

Petitioner argues that the failure of attorney Willis to call these witnesses, and therefore to preserve their testimony, prevented attorney Foster from calling them as witnesses at the hearing on Foster's suppression motion.  (Id.)  He contends that attorney Willis' deficient performance was "fatal to new counsel 'Foster' performance thus rendering him ineffective at the §1538.5 hearing."  (Id. at 18.)  Petitioner also argues that attorney Willis "failed to preserve the issue for further consideration on the Appellate level."  (Id.)

Because petitioner was on parole at the time he was detained, he was subject to the standard parole search condition set forth in California Code Regs., tit. 15 § 2511(b)(4).

1  Specifically, petitioner, his residence, and any property under petitioner's control could be

2  searched without a warrant at any time by any agent of the Department of Corrections or any law

3  enforcement officer.  (Id.)  Petitioner does not argue that the police did not have cause to search

4  his residence, nor could he.  A search of a parolee without any particularized suspicion is proper.

5  People v. Sanders, 31 Cal. 4th 318, 333 (2003); People v. Reyes, 19 Cal. 4th 743, 753-54

6  (1998).[4]  In this instance the police also suspected that petitioner was involved in the robbery of

7  Check X-Change.  Accordingly, there were two possible purposes for the search.[5]  Petitioner's

8  argument centers on whether the search of the Chico apartment was a search of his residence or

9  whether it constituted an unlawful warrantless search of the residence of Lisa Rogers.  Petitioner

10  claims that if counsel Willis had called Lisa Rogers, Dee Williamson, and Fran Bradley as

11  witnesses at the hearing on his motion to suppress, their testimony would have convinced the

12  trial judge that the Chico apartment was not petitioner's "residence."  For the following reasons,

13  the court concludes that attorney Willis' failure to call these three witnesses would not have

14  resulted in the suppression of the evidence discovered in the Chico apartment.

15  /////

16

17      [4]  Similarly, the Fourth Amendment does not prohibit a police officer from conducting a
    suspicionless search of a parolee.  Samson v. California, 547 U.S. 843, 846, 856 (2006).  Further,
18  where, as here, "an officer has reasonable suspicion that a probationer subject to a search
    condition is engaged in criminal activity, there is enough likelihood that criminal conduct is
19  occurring that an intrusion on the probationer's significantly diminished privacy interests is
    reasonable."  United States v. Knights, 534 U.S. 112, 121 (2001) (based upon suspicion that
20  Knights had been involved in arson and vandalism and pursuant to the search condition of his
    probation, a warrantless search of his apartment did not violate the Fourth Amendment).

21      [5]  Contrary to petitioner's arguments (see Traverse at 6.), the police were not conducting a
22  suspicionless parole search, nor was the search "arbitrary."  Cf. People v. Reyes, 19 Cal. 4th 743,
    752 (1998) (a suspicionless search of a parolee "is reasonable within the meaning of the Fourth
23  Amendment as long as it is not arbitrary, capricious or harassing").  Accordingly, it is irrelevant
    that petitioner failed to consent to such a search when he was released on parole.  See Cal. Penal
24  Code § 3067(a) (any inmate who is eligible for release on parole for an offense committed after
    January 1, 1997, must agree in writing to be subject to search or seizure by a parole officer or
25  other peace officer at any time of the day or night, with or without a search warrant and with or
    without cause, so long as the search is not for the sole purpose of harassment).  Petitioner's
26  argument that the search of the Chico apartment was improper because he did not sign a consent
    form pursuant to California Penal Code § 3067(a) is unavailing.

14

1    Whether the search of the Chico apartment was proper turns on whether the police

2    reasonably suspected that petitioner was sharing a residence with his wife, as opposed to being

3    merely a casual visitor.  People v. Woods, 21 Cal. 4th 668, 681-682 (1999.  See also Motley v.

4    Parks, 432 F.3d 1072, 1078-79 (9th Cir. 2005) ("Where a law enforcement officer's observations

5    support 'a reasonable belief' that a parolee resides at a particular address, this 'provide[s] a

6    reasonable basis for [a parole] search'") (quoting United States v. Dally, 606 F.2d 861, 863 (9th

7    Cir. 1979)).  The police officers who conducted the search of the Chico apartment testified at the

8    hearing on the suppression motion filed by attorney Willis.  In this regard, officer Lara testified

9    that he "ran a records check" on petitioner and "was able to determine that he had a California

10   identification card and listed a Chico address, 59E Cobblestone in Chico." (CT at 61.)  When he

11   and three other officers arrived at the apartment complex, the apartment manager advised them

12   that "a female named Lisa Rogers and the suspect had moved from 59E to 57B." (Id. at 62.)

13   Officer Moore testified that, prior to the search of the apartment, apartment manager Tomlinson

14   informed him that "at 59E, Lisa Elliot had registered but had recently moved to 57B and when

15   she filled out that new application she listed her name as Lisa Rogers." (Id. at 83-84.)  Moore

16   telephoned Lisa Rogers and she told him that she lived at 57B Cobblestone and that petitioner

17   was her husband.  (Id. at 84-85.)  Lisa Rogers did not object when Officer Moore told her that he

18   was going to search her apartment on the grounds that the terms and conditions of petitioner's

19   parole allowed law enforcement to make unannounced visits and searches of his residence.  (Id.

20   at 86.)

21        At trial, Officer Moore testified that, prior to the search, he determined petitioner

22   was married to Lisa Rogers and that petitioner's DMV records indicated that he lived on

23   Cobblestone Drive in Chico.  (RT at 359.)  Moore called the apartment and was told there was no

24   tenant with petitioner's name living in the complex but that Lisa Elliott Rogers lived in

25   apartment 57B.  (Id.)  Officer Moore went to the apartment complex and conducted the search of

26   the apartment.  (Id.)

1             Lisa Elliott Rogers and Dee Tomlinson testified at petitioner's trial.  The court

2 must assume that their testimony, given under oath, would have been the same had they been

3 called as witnesses at the suppression hearing on the motion filed by attorney Willis.  Ms.

4 Tomlinson testified at trial that police officers contacted her on November 24, 1999 and asked if

5 she knew where petitioner lived.  (RT at 351-52.)  She told them petitioner lived at 57

6 Cobblestone Drive, Apartment B.  (Id. at 352.)  She testified that, although petitioner did not sign

7 the rental agreement for Lisa Rogers' apartment, his name was on the application as a

8 "prospective tenant."  (Id. at 810.)  She stated that she had a conversation with Lisa Rogers at the

9 time she applied for the apartment, to the effect that petitioner would be living in the apartment.

10 (Id. at 810, 813.)  Tomlinson also testified that, although she had never met petitioner, it

11 appeared to her that he lived there.  (Id. at 811-12.)

12             Lisa Rogers testified that petitioner was the father of one of her children, and that

13 she had been married to petitioner for approximately two years.  (Id. at 451.)  At the time her

14 apartment was searched, she had been married to petitioner for three months.  (Id. at 486.)

15 However, petitioner lived in the Bay area because he had "odd jobs" there.  (Id. at 486-87.)  Ms.

16 Rogers stated that petitioner did not live with her "all the time," but that he sometimes spent the

17 night with her.  (Id. at 453, 454, 466.)  She testified that petitioner kept clothes at her apartment

18 and that he would spend the night "a couple of days in a row . . . off and on."  (Id. at 454-55.)

19 Petitioner left his razor and toothbrush at her house when he was staying in the Bay area.  (Id. at

20 488.)  Lisa Rogers also testified that petitioner did not have a key to her apartment.  (Id. at 504.)

21 She told the officer who searched her apartment that petitioner did not live in the apartment, but

22 that he sometimes "stayed the night."  (Id. at 466.)

23             In light of the above, petitioner has failed to establish prejudice with respect to his

24 claim that attorney Willis rendered ineffective assistance in failing to call Lisa Rogers, Dee

25 Tomlinson, and Fran Bradley as witnesses at the hearing on his motion to suppress.  The police

26 officers who searched the Chico apartment were in possession of information which would lead a

reasonable person to believe that petitioner lived with his wife in the Chico apartment.  The testimony of Lisa Rogers, Tomlinson, and Bradley supported the officers' belief in this regard. The evidence of record reflects that regardless of whether petitioner signed the rental agreement or often stayed with his ex- wife in Alameda County, he resided in the Chico apartment of Lisa Rogers at least part time.  The Chico apartment was listed on DMV records as petitioner's address, Tomlinson advised the officers that petitioner lived in the same apartment as Lisa Rogers, Tomlinson believed petitioner lived in the apartment, petitioner was married to Lisa Rogers, he left belongings there even when he wasn't spending the night, and he was the father of one of the children living in the apartment.  In other words, petitioner may have had several residences, but the Chico apartment was clearly one of them.  The court rejects petitioner's contention that the Chico apartment was not his residence for purposes of a parole search.  On the contrary, petitioner apparently resided there, at least on a permanent part-time basis.[6]

Petitioner has also failed to demonstrate that counsel's failure to call petitioner's parole officer as a witness constituted ineffective assistance.  Petitioner merely speculates that his parole officer may have testified that the apartment search was not a valid parole search of his residence.  However, petitioner provides no support for his speculation in this regard. "'Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'"  Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  See also Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (to establish that counsel was ineffective for failing to produce a witness at trial, a habeas petitioner

/////

---

[6]  The court also notes that attorney Willis testified at the hearing on the motion to dismiss filed by attorney Foster that, prior to the hearing, he had spoken with Lisa Rogers and knew that petitioner's name was not on the rental agreement for the Chico apartment. Notwithstanding this information, counsel apparently decided not to call Lisa Rogers and Tomlinson as witnesses at the suppression hearing.  This was a reasonable tactical decision in light of the subsequent trial testimony given by these witnesses that was contrary to the position being taken by the defense in connection with the motion.

1   must provide "evidence that this witness would have provided helpful testimony for the defense,"

2   such as an affidavit from the alleged witness).

3        Because petitioner has failed to establish that calling these three witnesses at the

4   hearing on a motion to suppress evidence would have changed the outcome of the motion, he is

5   not entitled to relief on this claim of ineffective assistance of counsel.

6        3. <u>Failure of Attorney Foster to File a Petition for Writ of Mandate or Prohibition</u>

7   <u>after the Denial of the Suppression Motion (claim three)</u>

8        In his next claim, petitioner argues that attorney Foster rendered ineffective

9   assistance by failing to follow the appropriate procedures to preserve for appeal the trial court's

10  denial of his motion to suppress the evidence obtained from the search of the Chico apartment.

11  (Pet. at 6.)  Petitioner also argues that attorney Foster improperly failed to file a writ of mandate

12  challenging the denial of his motion to dismiss on grounds of the ineffective assistance rendered

13  by attorney Willis.  (P&A at 24-26.)  In his traverse, petitioner explains, "after being convicted

14  but prior to sentencing, trial counsel Jodea Foster should have pursued the Section 995 motion to

15  the Court of Appeal to review the lower court ruling denying admission of evidence to support

16  the motion to suppress."[7]  (Traverse at 18.)

17       Assuming arguendo that the Sixth Amendment right to counsel extends to an

18  interlocutory appeal of the denial of a suppression motion (<u>see</u> <u>Wainwright v. Torna</u>, 455 U.S.

19  586, 587-88 (1982) (where there is no constitutional right to counsel there can be no deprivation

20  of effective assistance)), petitioner has failed to demonstrate that the result of the proceedings

21  would have been different absent counsel's allegedly deficient performance.  As discussed above,

22  petitioner has failed to demonstrate that the motion to suppress evidence obtained from the Chico

23

24        [7] California Penal Code § 995 provides the grounds for setting side an indictment or
25  information.  California Penal Code § 1538.5 provides that a defendant may seek pretrial
    appellate court review of a Superior Court order denying a motion to suppress evidence by
26  petitioning for a writ of mandate or prohibition.  That code section also provides that a defendant
    "may seek further review of the validity of a search or seizure on appeal from a conviction."

1   apartment was improperly denied or that attorney Willis rendered ineffective assistance in

2   connection with that motion.  Accordingly, an appeal of the trial court's rulings would have been

3   meritless.  An attorney's failure to make a meritless objection or motion does not constitute

4   ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing

5   Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)); see also Rupe v. Wood, 93 F.3d 1434,

6   1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

7   Accordingly, petitioner is not entitled to relief on this claim.

8                   4.  Failure of Trial Counsel to file a "Pitchess" Motion (claim four)

9                   Petitioner's next claim is that trial counsel Grady Davis rendered ineffective

10  assistance by failing to file a so-called "Pitchess" motion seeking personnel records of the police

11  officers involved in the search of the Chico apartment.  (P&A at 26.)  Petitioner argues that "the

12  sole basis for the warrantless search and seizure was for petitioner's parole status," and contends

13  that officers violated the constitutional rights of Lisa Rogers, who refused to give her consent for

14  the search.  (Id.)   Petitioner also argues that the officers failed to "call the parole department to

15  determine petitioner's parole status" and that they testified falsely at the preliminary hearing "that

16  the door was unlocked before they entered the home and had a verbal consent."  (Id. at 27.)

17  Petitioner notes that Lisa Rogers filed a "formal citizens Complaint stating the search was illegal

18  and that the Detective's manipulated her statements to their convenience."  (Id.)  Petitioner

19  argues that a Pitchess motion might have uncovered evidence the officers had committed similar

20  misconduct in the past.  (Id. at 27-29.)  Petitioner states that his allegations:

21              [are] not based on speculation but a genuine belief officers have
                circumvented policy and procedures in the past regarding racial
22              profiling (traffic stop of African American Males), and
                requirements of warrantless parole searches vs. a search pursuant
23              to a valid warrant.

24  (Traverse at 21.)  Petitioner argues that a successful Pitchess motion could have supported his

25  defense of mistaken identity or resulted in a dismissal of the case.  (P&A at 27-29.)

26  /////

1          Petitioner's 'belief" that a <u>Pitchess</u> motion might have been successful is

2    insufficient to establish prejudice.  <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)

3    ("presentation of conclusory allegations unsupported by specifics is subject to summary

4    dismissal"); <u>Jones</u>, 66 F.3d at 204; <u>James</u>, 24 F.3d at 26.  Notwithstanding petitioner's personal

5    opinion, he has failed to set forth any facts demonstrating that a <u>Pitchess</u> motion would have

6    revealed misconduct by any of the officers who searched the apartment.  Accordingly, petitioner

7    is not entitled to relief on this claim.

8          5.  <u>Failure of Trial Counsel to Appeal the Denial of the Suppression Motion</u>

9    <u>(claim four)</u>

10         Petitioner's next claim is that trial attorney Davis rendered ineffective assistance

11   by failing to appeal the court's denial of the motion to suppress evidence filed by attorney Foster.

12   (P&A at 26, 29-30.)  Petitioner states that he "trusted that counsel would proceed on and exhaust

13   his State remedies on this line of attack."  (<u>Id.</u> at 29-30.)  As discussed above, petitioner has

14   failed to demonstrate that a challenge to the trial court's denial of the suppression motion would

15   have prevailed.  He has therefore failed to establish prejudice with respect to this aspect of his

16   ineffective assistance of counsel claim and is not entitled to relief.

17         6.  <u>Failure of Trial Counsel to Raise a Defense of Third Party Culpability (claim</u>

18   <u>four)</u>

19         Petitioner next claims that his trial counsel also rendered ineffective assistance by

20   failing to pursue a claim of third party culpability.  Petitioner bases this claim on the affidavit

21   from Anthony Richardson, a prisoner in Butte County Jail, wherein Richardson took

22   responsibility for the crime for which petitioner was convicted.  (Pet., Ex. J.)

23         The state court record reflects that attorney Davis informed the court prior to trial

24   that he wished to add Anthony Richardson to the defense witness list.  (RT at 116.)  The

25   following colloquy then occurred:

26   /////

1        MR. BARONE (the prosecutor):  Your Honor, I am going to object
at this late notice.  This person's name does not appear anywhere in
2        the report.  I have been provided no discovery whatever.

3        THE COURT:  Tell me about Mr. Richardson, when you found out
about him, what reason he has or doesn't have.
4

5        MR. DAVIS:  I discovered this over the weekend.  It's a letter from
Mr. Richardson dated 12/11/00 in which he basically confesses to
this crime and claims responsibility for it.
6

7        MR. BARONE:  Letter to who?

8        MR. DAVIS:  It says, "To whom it may concern."

9        THE COURT:  Well, Mr. Richardson may be in the prison system.
He has a motion to withdraw a plea.

10        MR. DAVIS:  I haven't spoken to him.

11        THE COURT:  I suggest someone speak with him before you call
him.  I will wait until you tell me what he's going to say and who
12        the letter was to and the circumstances under which it was
authorized.  I will give Mr. Richardson's name to the jury as a
13        possible witness.  That doesn't mean he's going to be called or not
called.
14

15 (Id. at 117.)  The jury was subsequently advised simply that Anthony Richardson, along with

16 others, was a possible witness in the case.  (Id. at 132.)  The next day, the following exchange

17 occurred with respect to Mr. Richardson:

18        MR. BARONE:  Yesterday morning Mr. Davis announced a
witness that had written a letter yesterday afternoon.  Before
19        recessing today I ask the Court to order the discovery of that letter
Mr. Davis made the announcement he changed his mind and at that
20        time agreed he wasn't going to call that witness.  I would like Mr.
Davis to put on the record that is a strategy and tactical decision to
21        avoid further problems with that issue.

22        THE COURT:  Mr. Davis?

23        MR. DAVIS:  I think it was on the record at this point.

24        THE COURT:  This is based on your tactics and strategy?

25        MR. DAVIS:  Yes.

26        THE COURT:  That's clear?

1                 MR. DAVIS:  It may change but that's the present status.

2 (Id. at 312.)

3                 Petitioner claims that his trial counsel was ineffective in failing to call Mr.

4 Richardson as a witness at trial.  Petitioner argues that counsel "painted a picture to the jury that

5 a witness had taken responsibility for the crime, but was never informed why Mr. Richardson

6 was not called for the defense."  (P&A at 31.)  In his traverse, petitioner contends that

7           [b]ased on the weak eyewitness evidence and the Richardson
          confession, it would have raised reasonable doubt that petitioner

8           was the robber of Check X-Change, and provided the jury with
          another alternative to convict.  The jury should have been given an

9           opportunity to assess Richardson's credibility to determine whether
          his confession was believable, and based on such assessment,

10           render its verdict of guilt of innocence.

11 (Traverse at 23.)

12                 Reasonable tactical decisions, including decisions with regard to the presentation

13 of the case, are "virtually unchallengeable."  Strickland, 466 U.S. at 690 ("strategic choices made

14 after thorough investigation of law and facts relevant to plausible options are virtually

15 unchallengeable").  "The decision whether to call any witnesses on behalf of the defendant, and if

16 so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in

17 almost every trial."  United States v. Nersesian, 824 F.2d 1294, 1321 (2nd Cir. 1987).  Petitioner

18 has failed to overcome the presumption that his attorney's decision not to call Mr. Richardson to

19 the witness stand was sound trial strategy and reasonable under the circumstances.  Bell v. Cone,

20 535 U.S. 685, 698 (2002) (even when a court is presented with an ineffective assistance of

21 counsel claim that is not subject to § 2254(d)(1) deference, a defendant must overcome the

22 presumption that, under the circumstances, the challenged action might be considered sound trial

23 strategy).   Accordingly, petitioner is not entitled to relief on this claim.

24                 7.  Failure of Trial Counsel to Retain a Fingerprint Expert (claim four)

25                 Petitioner claims that his trial counsel rendered ineffective assistance in failing to

26 retain a fingerprint expert.  Petitioner notes that crime scene investigator Madden testified at the

preliminary hearing that she found fingerprints on the drawer of the cash register at Check X-Change but that she didn't know whether the fingerprints were "processed or identified." (CT at 39.) At trial, Ms. Madden testified that she "processed" the cash register area but didn't recall whether she located any fingerprints there. (RT at 568.) After having her memory refreshed with her preliminary hearing testimony, Madden testified that she must have found at least one fingerprint on the cash register drawer. (Id. at 569-75, 588.) She also testified that after obtaining the fingerprint evidence, she turned it over to another investigator, but did not have a record of having done so. (Id. at 571-75, 586.) Madden also testified she was aware of the importance of documenting the chain of custody of evidence. (Id. at 573-74.) On cross-examination, the following exchange took place:

> Q. (by the prosecutor):  And you testified that you checked certain areas for latent prints the date of November 24th?
>
> A. (by Officer Madden):  Yes, sir.
>
> Q.   You have refreshed your recollection with your testimony from a preliminary hearing in this matter at an earlier date, correct?
>
> A.  Yes, sir.
>
> Q.  And your testimony at that time was you located prints on a teller drawer, correct?
>
> A.  Yes, sir.
>
> Q.  Officer, have you ever made mistakes?
>
> A.  Yes, sir.
>
> Q.  As you sit here today do you know for a fact if you located latent prints on a teller drawer?
>
> A.  No, sir.
>
> Q.  Officer, as you sit there with all the latent prints in front of you, does it list a latent print from a teller drawer?
>
> A.  No, sir.
>
> Q.  Is it possible you are mistaken?

1          A.  Yes, sir.

2  (Id. at 600.)

3          Petitioner contends that Officer Madden's testimony at the preliminary hearing

4  that she lifted a print from the cash register drawer was accurate because that testimony was

5  given closer to the time of the actual events, while they were still fresh in her mind.  (P&A at 34-

6  35.)  Petitioner also notes that the prosecutor did not correct Officer Madden when she testified

7  at the preliminary hearing that she had found a fingerprint on the cash register drawer.  (Id. at

8  34.)  Citing the decision in California v. Trombetta, 467 U.S. 479, 488 (1984), petitioner claims

9  that the fingerprint on the cash register drawer "has now been misplaced, or lost or even

10  destroyed," in violation of his right to due process.  He also argues that Officer Madden's "rough

11  notes" should have been preserved because they were "discoverable Brady evidence."  (Id. at 36;

12  Traverse at 23.)  Petitioner faults his trial counsel for failing to obtain a fingerprint expert under

13  these circumstances.  He argues that "the print that was lifted off the cash tray would have

14  provided exculpatory evidence that the print did not belong to petitioner but to another suspect

15  and undermine the prosecutor theory that petitioner had entered the area of the cash registers."

16  (P&A at 35.)  Petitioner also argues that a fingerprint expert could have investigated the "missing

17  prints," and could have "balance[d] the testimony of officer Madden, and had there ever been

18  reports of missing or lost evidence and to the importance of the chain of custody protocol . . . ."

19  (Id.)

20          After a review of the record, the court concludes that petitioner has failed to

21  establish prejudice with respect to this claim of ineffective assistance of counsel.  Even assuming

22  arguendo that a fingerprint was obtained from the cash register drawer at Check X-Change and

23  that it could be established that the print was not from petitioner, this evidence would not have

24  resulted in a different outcome at his trial.  "Ineffective assistance claims based on a duty to

25  investigate must be considered in light of the strength of the government's case."  Bragg v.

26  Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting Eggleston v. United States, 798 F.2d 374,

376 (9th Cir. 1986)).  The evidence of petitioner's culpability for the robbery was overwhelming.  Notably, petitioner's fingerprint was found on the inside of the exit bar of the Check X-Change.  In light of this evidence along with all of the other evidence implicating petitioner as outlined above, expert testimony that petitioner's fingerprints were not also found on the cash register drawer would not have resulted in a different verdict.[8]

Petitioner has also failed to demonstrate that his federal constitutional rights were violated by the loss or destruction of evidence.  Due process requires that the prosecution disclose exculpatory evidence within its possession.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  However, a failure to preserve evidence violates a defendant's right to due process only if the unavailable evidence possessed "exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Trombetta, 467 U.S. at 489; Cooper v. Calderon, 255 F.3d 1104, 1113 (9th Cir. 2001).  A defendant must also demonstrate that the police acted in bad faith in failing to preserve potentially useful evidence.  Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Cooper, 255 F.3d at 1113; see also Guam v. Muna, 999 F.2d 397, 400 (9th Cir. 1993).  The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.  Youngblood, 488 U.S. at 56-57 n.*; see also United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993).  Further, the failure to disclose exculpatory evidence must have resulted in prejudice.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  "The touchstone of [the prejudice analysis] is whether admission of the

/////

---

[8] Petitioner has also failed to articulate what the retention of a defense fingerprint expert could have accomplished.  Because there was no existing fingerprint evidence from the cash register drawer, the expert would have had no prints to analyze.  Nor would an independent fingerprint expert have been able to give relevant testimony with regard to the evidence collection procedures of the Chico police department.  Under the circumstances presented here, petitioner has failed to show that his trial counsel rendered deficient performance in failing to retain a fingerprint expert or that, but for counsel's failure to obtain such an expert, the result of the trial would have been different.

1   suppressed evidence would have created a 'reasonable probability of a different result.'" United

2   States v. Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007) (citations omitted).

3           Notwithstanding petitioner's speculation as to whether a fingerprint was lifted

4   from the cash register drawer and, if so, what happened to that fingerprint evidence, petitioner

5   has failed to demonstrate that any evidence was destroyed, that any such evidence had

6   exculpatory value to him, that the police acted in bad faith in failing to preserve the evidence, or

7   that admission of the evidence would have created a reasonable probability of a different result at

8   his trial.  The same is true with respect to Officer Madden's "rough notes." Petitioner has pointed

9   to no evidence that such "rough notes" even existed.  "The proponent of a Brady claim . . . bears

10  the initial burden of producing some evidence to support an inference that the government

11  possesses or knew about material favorable to the defense and failed to disclose it." United

12  States v. Price, 566 F.3d 900, 910 (9th Cir. 2009).  Petitioner has failed to meet this burden.

13  Accordingly, he is not entitled to relief on any such claim.

14          8.  Failure of Trial Counsel to Challenge the Chain of Custody of the Money

15  Taken from Petitioner (claim four)

16          In his next claim, petitioner contends that his trial counsel rendered ineffective

17  assistance when he failed to "challenge the chain of custody of the money found in petitioner's

18  pocket" and failed to object to the admission of evidence regarding this money at trial.  (P&A at

19  36-37.)  Petitioner notes that Lisa Rogers testified at trial and Sheena Moore testified at the

20  preliminary hearing that, immediately prior to the robbery, they each gave petitioner

21  approximately $2,000 to buy a car.  (Id. at 37, 40.)  Petitioner asserts that when he was stopped

22  by the police he had approximately $4100 in his possession but that only $2980 was booked as

23  evidence.  (Id. at 37.)  Petitioner claims that the money taken from him after he was stopped by

24  police "has been tampered with." (Id. at 36.)  Specifically, he suggests that some of the money

25  recovered from him was in fact taken by the police so that the remaining amount would

26  correspond to the amount of cash stolen from the Check X-Change.  (Id. at 36-39.)  Petitioner

1    notes that the testimony elicited by the prosecution at trial did not fully account for the money

2    from the time it was taken from him to the time it was received into evidence.  (Id.)  Specifically,

3    petitioner contends that Officer Nicodemus' transfer of the money to Officer Castillo and Officer

4    Castillo's subsequent transfer of the money to Detective Moore were not formalized in any

5    report.  (RT at 319-20, 329-30.)  In his separate motion for evidentiary hearing, petitioner notes

6    that "no report was done by arresting officers, and it was only after returning to the station that

7    Detective Castillo delivered the money to Detective Merrifield who then filled out a chain of

8    custody form."  ( Mot. for Evidentiary Hr'g filed May 28, 2008, at 6.)  Petitioner states that he

9    did not receive a receipt from the police for the confiscated cash.

10           Petitioner also faults his trial counsel for failing to call Sheena Moore as a witness

11   at trial to testify, as she did at his preliminary hearing, that she also gave petitioner $2,000 to buy

12   a car.  (P&A at 40.)  He argues that this left the jury with the impression that he had only

13   received the $2,000 from Lisa Rogers, and not the combined approximately $4,000 that he

14   actually received from both women.  (Id.)  Petitioner notes that he wrote a letter informing the

15   trial judge that he "had $4100 on his possession at the time of the arrest."  (Pet., Ex. M.)

16   Petitioner faults his trial counsel for failing to remind the trial court of this letter, or to investigate

17   the circumstances of the missing money.  (P&A at 41.)

18           Petitioner has failed to establish either deficient performance or prejudice with

19   respect to this aspect of his ineffective assistance of counsel claim.  First, attorney Davis in fact

20   extensively challenged the chain of custody of the money taken from petitioner at the scene of his

21   detention.  (RT at 319-33, 341-46.)  Counsel's questions were clearly designed to exploit gaps in

22   the police documentation regarding the transfer of the money from the scene of petitioner's

23   detention to the time of trial.  (Id.)  Further, in closing argument counsel insinuated that this case

24   was similar to the O.J. Simpson trial, where doubts about the chain of custody of evidence led to

25   accusations of police improprieties, a defense that the defendant had been "framed" by police,

26   and ultimately an acquittal.  (Id. at 916-18.)  Because of defense counsel's efforts in this regard,

petitioner's argument that his attorney failed to exploit the absence of evidence regarding the chain of custody of the cash lacks a factual basis.  Second, petitioner's bald contention that the police stole some of the money confiscated from him in order to make it appear that he committed the robbery at the Check X-Change is unsupported and based on pure speculation. These allegations are too vague to support petitioner's claim that his trial counsel rendered ineffective assistance.

Petitioner's argument that his trial counsel rendered ineffective assistance by failing to call Sheena Moore to testify that she also gave petitioner $2,000 also lacks merit. Counsel elicited evidence that petitioner had recently received $2,000 from his wife to buy a car, which was adequate to explain why petitioner was in possession of so much cash.  Any testimony that petitioner had received another $2,000 from his ex-wife was not necessary for this purpose. Petitioner's argument that if his trial counsel had offered evidence that petitioner possessed more than $4,000, "jurors could have concluded officers were responsible for the loss or concealment of the remainder of the $4,100" is not persuasive and, as noted above, is entirely speculative.

For all of the foregoing reasons, petitioner is not entitled to habeas relief on these claims.

### 9. Failure of Trial Counsel to "Readdress" a Prior Motion on the Basis of Ineffective Assistance (claim four)

Petitioner next claims that his trial counsel rendered ineffective assistance by failing, after petitioner was convicted, to "reargue" the motion to dismiss filed by prior counsel Jodea Foster.  (P&A at 41.)  Petitioner notes that when the motion to dismiss authored by Attorney Foster was denied, the trial judge commented that the motion was premature because petitioner had not yet been found guilty.  Petitioner claims that after he was found guilty, attorney Davis should have renewed the motion.  For the reasons described above, the court has concluded that the motions to suppress and to dismiss filed by his attorneys on behalf of petitioner were not meritorious in any event.  Accordingly, petitioner has failed to establish

28

1   prejudice from the failure of trial counsel to renew those motions and is therefore not entitled to

2   relief .

3       B.  Fourth Amendment

4           Petitioner's next claim is that his conviction was obtained by the admission of

5   evidence seized in violation of the Fourth Amendment.  (Pet. at consecutive p. 4 & P&A at 19-

6   23.)  Specifically, as described above, petitioner alleges that the police search of his wife's

7   apartment in Chico was unlawful.  This claim is not cognizable in this federal habeas corpus

8   petition.

9           The United States Supreme Court has held that "where the State has provided an

10  opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be

11  granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

12  search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  Thus,

13  a Fourth Amendment claim can only be litigated on federal habeas where petitioner demonstrates

14  that the state did not provide an opportunity for full and fair litigation of the claim; it is

15  immaterial whether the petitioner actually litigated the Fourth Amendment claim, whether the

16  state courts correctly disposed of the Fourth Amendment issues tendered to them, or even

17  whether the claim was correctly understood.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th

18  Cir. 1996); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994); Gordan v. Duran, 895

19  F.2d 610, 613 (9th Cir. 1990).

20          Petitioner had a full and fair hearing in state court on his Fourth Amendment

21  claim.  As explained above, petitioner filed a motion to suppress the evidence seized after the

22  search of the Chico residence and the trial court held an evidentiary hearing on that motion.  (CT

23  at 10-14, 24-115.)  Petitioner subsequently filed a second motion to suppress the evidence seized

24  from the apartment in Chico and received a hearing on that motion as well.  (Id. at 141-43.)

25  Petitioner also challenged the validity of the search in his state habeas petitions.  (Resp't's

26  Lodged Docs. 7, 9, 11, 12.)   The California Court of Appeals and Supreme Court reviewed and

1   rejected petitioner's argument that his rights under the Fourth Amendment were violated by the

2   search.  (Resp't's Lodged Docs. 10, 14.)

3          Petitioner argues that he did not have a full and fair opportunity to litigate his

4   Fourth Amendment claim in state court because attorney Willis, who represented him in

5   connection with the first motion to suppress, rendered ineffective assistance by failing to call

6   additional witnesses in support of the motion.  (Traverse at 16.)  The argument is unpersuasive

7   and should be rejected.  Petitioner's claim that his counsel was ineffective in presenting the

8   motion to suppress is distinct from his Fourth Amendment claim and has been addressed above.

9   See Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986) (restrictions on federal habeas review

10  of Fourth Amendment claims announced in Stone v. Powell do not extend to a Sixth Amendment

11  claim of ineffective assistance of counsel in failing to file motion to suppress).  Petitioner has

12  failed to demonstrate that his counsel's performance in connection with the motion to suppress

13  constituted ineffective assistance.

14         For the foregoing reasons, petitioner's claim that his Fourth Amendment rights

15  were violated is barred in this federal habeas proceeding.  Stone v. Powell, 428 U.S. at 494.

16     C.  Prosecutorial Misconduct

17         Petitioner raises two claims of prosecutorial misconduct.  First, he argues that the

18  prosecutor failed to correct the knowingly false testimony of Officer Castillo (claim five).

19  Second, petitioner contends that the prosecutor committed misconduct during his closing

20  argument when he expressed his personal opinion that petitioner was guilty (claim seven).  The

21  court will address these claims two in turn below.

22         1.  Failure to Correct Knowingly False Testimony of Officer Castillo

23         At trial, Officer Castillo testified that Officer Nicodemus gave him a "packet"

24  containing the cash confiscated from petitioner at the vehicle stop, and that he took that packet to

25  the police station where he gave it to Detective Moore.  (RT at 318-19.)  Castillo testified that he

26  did not write a report detailing his receipt and transfer of the money because his participation in

1    the investigation was "minimal." (Id. at 319.) On cross-examination, when asked whether he

2    had been trained on how to properly document the chain of custody of evidence, Officer Castillo

3    explained that, while the police must "document the chain of custody for a specific item," the

4    responsibility to do so fell to the investigating officer, and "not just up to the person who took

5    possession of [the item]." (Id. at 323.) Petitioner argues that this testimony was false because it

6    is "mandatory for all law enforcement officers to record in detail the purpose and length of time

7    for handling the evidence and whom they took possession from." (P&A at 46.) Petitioner also

8    claims that the prosecutor knew Officer Castillo's testimony in this regard was false but

9    improperly failed to correct it. (Id.) Petitioner notes that the prosecutor argued in closing that

10   Detective Castillo would have no motive to lie. (Id. at 48-49; RT at 956.) Petitioner argues that,

11   on the contrary, Castillo's testimony was used to plug a "gap" in the evidence regarding the chain

12   of custody of the money and that Castillo's "motive" was to "be a team player to fill the gap and

13   strengthen the  case." (P&A at 48-49.)

14          Officer Castillo also testified at trial that he believed he had previously testified

15   about his role in the investigation at petitioner's preliminary hearing, held approximately

16   eighteen months prior to Castillo's trial testimony. (RT at 323-24.) When petitioner's counsel

17   provided evidence that Castillo had not, in fact, been a witness at the preliminary hearing,

18   Castillo conceded that he might be mistaken in this regard. (Id. at 324.) Petitioner argues that

19   Officer Castillo's statement that he had testified at the preliminary hearing was false and that the

20   prosecutor committed misconduct in failing to correct it.

21          In his traverse, petitioner summarizes his claims in this regard as follows:

22          As brought forth above, petitioner offered material evidence that he
             possessed more than the amount of currency accounted for by
23          investigating officers.  Testimony that Castillo was not required to
             file a chain of custody report and, his statement that he previously
24          testified on the issue during preliminary hearing, is material and
             affected the judgement of the jury.  It discounted evidence offered
25          at trial on the currency issue and all but assured jurors that there
             was not real protocol when collecting and securing material
26          evidence in the course of a criminal investigation.  That in this

                                              31

1

2

> case, there was not reason to suspect Chico Police Officer Castillo
> would tamper with or conceal evidence.  (TRT 956)

3

4

> The fact the prosecution argued in closing Castillo's motive to
> tamper with material evidence, it's a material piece of evidence
> and false testimony bearing on the issue must be corrected.  The
> prosecutor should have informed the jury that Castillo did not
> testify at preliminary hearing, and that Chico Police are required to
> record a chain of custody report when collecting evidence during a
> criminal investigation.  Failure of the prosecution to do so is
> misconduct and an unreasonable application of United States
> Supreme Court law.

5

6

7

8  (Traverse at 29-30.)

9         Petitioner raised these claims for the first time in his petition for a writ of habeas

10  corpus filed in the Butte County Superior Court.  (Resp't's Lodged Doc. 7 at 52-56.)  As

11  described above, that court denied the entire petition by checking boxes on a form order which

12  stated that petitioner's allegations were too "vague, unsupported, and conclusionary" to permit

13  "intelligent consideration" of petitioner's claims, and that "issues resolved on appeal cannot be

14  reconsidered on habeas corpus."  (Resp't's Lodged Doc. 8.)  Subsequent petitions in which

15  petitioner raised the same issue were summarily denied.  (Resp't's Lodged Doc. 9 at 52-56; 10;

16  11; 12 at 52-56; 13; 14.)  Because the Butte County Superior Court did not reach the merits of

17  petitioner's claim of prosecutorial misconduct based on the testimony of Officer Castillo, this

18  court will evaluate that claim de novo.  Nulph, 333 F.3d at 1056.

19         It is clearly established that "a conviction obtained by the knowing use of perjured

20  testimony must be set aside if there is any reasonable likelihood that the false testimony could

21  have affected the jury's verdict."  United States v. Bagley, 473 U.S. 667, 680 n.9 (1985).  See

22  also Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004) ("The due process requirement

23  voids a conviction where the false evidence is 'known to be such by representatives of the

24  State.'") (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)).  This rule applies even where the

25  false testimony goes only to the credibility of the witness.  Napue, 360 U.S. at 269; Mancuso v

26  Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).  There are two components to establishing a claim

for relief based on the prosecutor's introduction of perjured testimony at trial.  First, the

petitioner must establish that the testimony was false.  United States v. Polizzi, 801 F.2d 1543,

1549-50 (9th Cir. 1986).  Second, the petitioner must demonstrate that the prosecution knowingly

used the perjured testimony.  Id.  Mere speculation regarding these factors is insufficient to meet

petitioner's burden.  United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).

Petitioner has failed to make the required showing in support of this claim.  First,

petitioner has failed to establish that Officer Castillo was incorrect when he testified that the duty

to document the chain of custody does not necessarily fall on each officer who has handled the

evidence, but may be discharged by one of the investigating officers.  Petitioner has also failed to

demonstrate that the prosecutor knew Officer Castillo's testimony was false in this respect.  In

any event, Officer Castillo was thoroughly questioned with regard to the protocol involved when

items of evidence are collected and then transported to the police station.  (RT at 325-33.)

Officer Castillo consistently testified that, although the chain of custody of evidence must be

documented, it is sufficient if the investigating officers complete the actual chain of custody

documentation.  (Id. at 332, 333.)  The following testimony was also elicited during Castillo's

cross-examination by defense counsel:

Q.  (by petitioner's counsel):  Is it sometimes such that as a human being officers make mistakes in the which [sic] they conduct their investigation?

A.  Yes.

Q.  Would it be fair to say in this case this should have been documented?

A.  Should have been.

MR. DAVIS:  Okay.  No further questions.

THE COURT:  Anything?

MR. BARONE (the prosecutor):

Q.  Should have been documented by who, officer?

1          A.  The investigating officers.

2    (Id. at 332-33.)  Through this exchange, the jury was alerted that the chain of custody protocol

3    may not have been strictly followed in this case.  Under these circumstances, there is no

4    reasonable likelihood that Officer Castillo's allegedly false testimony regarding who bore the

5    responsibility of completing the chain of custody documentation could have affected the jury's

6    verdict.

7          With respect to Officer Castillo's mistaken testimony that he believed he had

8    testified at petitioner's preliminary hearing, this testimony was quickly corrected in the jury's

9    presence and Castillo admitted he was mistaken.  In any event, whether or not Castillo testified at

10   the preliminary hearing was immaterial to the issues to be resolved by the jury at trial.  Any error

11   by the prosecutor in this respect could not have had a substantial and injurious effect or influence

12   on the verdict.

13         For these reasons, petitioner's claim that the prosecutor committed misconduct

14   when he failed to correct the testimony of Officer Castillo will be rejected.

15              2.  Misconduct During Closing Argument

16         Petitioner claims that the prosecutor also committed misconduct during his

17   closing argument when he expressed his personal opinion that petitioner was guilty (claim

18   seven).  Petitioner raised this argument on appeal and it was rejected by the California Court of

19   Appeal, which reasoned as follows:

20              Defendant contends reversal of his convictions is required under
              both the federal and state Constitutions because the prosecutor
21              committed prejudicial misconduct – once when defense counsel
              objected and several times when he did not.  No reversal is
22              required.

23              "'The applicable federal and state standards regarding prosecutorial
              misconduct are well established.  "'A prosecutor's . . . intemperate
24              behavior violates the federal Constitution when it comprises a
              pattern of conduct "so egregious that it infects the trial with such
25              unfairness as to make the conviction a denial of due process."'"
              [Citations.]  Conduct by a prosecutor that does not render a
26              criminal trial fundamentally unfair is prosecutorial misconduct

34

1      under state law only if it involves """"the use of deceptive or
       reprehensible methods to attempt to persuade either the court or the
2      jury."""  (People v. Hill (1998) 17 Cal.4th 800, 819, 72 Cal.Rptr.2d
       656, 952 P.2d 673 (Hill).)
3
       The incident to which defendant objected arose during the
4      prosecutor's opening argument, when he stated:  "Now Mr. Davis
       (defense counsel) has made a big issue of the fact (during witness
5      cross-examination) that the police didn't do a thorough
       investigation here.  They didn't go out and look for the real
6      criminal.  Perhaps he's on a golf course somewhere.  I hardly think
       so.  I think the person that committed this robbery and I know the
7      person who committed this robbers [sic] is sitting in the courtroom
       . . . ."  Counsel objected, and the court admonished the prosecutor:
8      "Mr. Barone (prosecutor), the best  way is to suggest to the jury as
       far as your personal or [defense counsel's] personal views of the
9      evidence.  [Sic.]  Please avoid those references."  The prosecutor
       replied, "I will do that, Your Honor.  Thank you."
10
       It has long been the rule that it is improper for the prosecutor to
11     express his or her personal opinion or belief in the defendant's
       guilt.  (People v. Bain (1971) 5 Cal.3d 839, 848, 97 Cal.Rptr. 684,
12     489 P.2d 564.)  And it is equally well established that the jury is
       presumed to follow the court's direction to disregard the offending
13     action.  (People v. Osband (1996) 13 Cal.4th 622, 718, 55
       Cal.Rptr.2d 26, 919 P.2d 640 (Osband).)
14
       Here, in response to defendant's objection, the court's direction to
15     the prosecutor to refrain from expressing his personal views of the
       evidence, coupled with the prosecutor's open acceptance of that
16     direction, was in effect an admonition to the jury to disregard the
       prosecutor's personal belief.  In the absence of anything to the
17     contrary in the record, we presume the jury followed the
       admonition.  (Osband, supra, 13 Cal.4th at p. 718, 55 Cal.Rptr.2d
18     26, 919 P.2d 640.)

19   (Opinion at 5-7.)  Because the California Court of Appeal addressed this claim on the merits, this

20   court will evaluate the claim pursuant to the standards set out in the AEDPA.

21           Prosecutorial misconduct does not, per se, violate a petitioner's constitutional

22   rights.  Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden v. Wainwright, 477

23   U.S. 168, 181 (1986) and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Rather,

24   claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire

25   proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness

26   as to make the resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926,

929 (9th Cir. 1995).  See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v.

DeChristoforo, 416 U.S. 637, 643 (1974); Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002).

Relief is limited to cases in which the petitioner can establish that prosecutorial misconduct

resulted in actual prejudice.  Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S.

619, 637-38 (1993)); see also Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868.  Put another

way, prosecutorial misconduct violates due process when it has a substantial and injurious effect

or influence in determining the jury's verdict.  See Ortiz-Sandoval, 81 F.3d 891, 899 (9th Cir.

1996).

         In considering claims of prosecutorial misconduct involving allegations of

improper argument the court is to examine the likely effect of the statements in the context in

which they were made.  Turner, 281 F.3d at 868; Sandoval v. Calderon, 241 F.3d 765, 778 (9th

Cir. 2001); see also Donnelly, 416 U.S. at 643; Darden, 477 U.S. at 181-83.  "Judicial review of

a defense attorney's summation is . . . highly deferential - and doubly deferential when it is

conducted through the lens of federal habeas."  Yarborough v. Gentry, 540 U.S. 1, 6 (2003).  A

prosecutor improperly vouches during a closing argument if the prosecutor (a) "plac[es] the

prestige of the government behind a witness through personal assurances of the witness's

veracity;" (b) "suggest[s] that information not presented to the jury supports the witness's

testimony;" or (c) "express[es] his [or her] personal opinion concerning the guilt of the accused."

United States v. Weatherspoon, 410 F.3d 1142, 1146-47 (9th Cir. 2005).

         Petitioner has failed to establish prejudice with respect to his claim that the

prosecutor committed misconduct when during his argument to the jury he briefly expressed his

personal opinion of petitioner's guilt.  Assuming arguendo that the prosecutor's statements

constituted misconduct, any possible prejudice was nullified when the trial court directed the

prosecutor to refrain from expressing his personal views and the prosecutor expressly agreed to

do so.  In addition, as explained by the California Court of Appeal in affirming petitioner's

conviction, the evidence against petitioner was overwhelming.  Specifically,

1
2
3
4
5
6
7
8
9

Defendant was identified in and out of court as the person who committed the robbery; the vehicle the robber escaped in was identified as looking like that which defendant was driving when stopped; defendant's fingerprint was found on the door handle of Check X-Change, and customarily, the door handle was cleaned after closing each night and had been the night before the robbery; the robber had a Scream mask and a black bag, a Scream mask and a black bag were found in the apartment he shared with his wife and stepson, and the black bag and the Scream mask were identified as looking like those used by the robber; the robber was dressed in black, and black pants were found on the floor of the closet of defendant's residence; and, most tellingly, defendant had cash on him that matched almost precisely the denominations of the cash taken in the robbery-notably, of the eight $100 bills, thirteen $50 bills, fifty-two $20 bills, thirty $10 bills, thirty-eight $5 bills and twenty-five $1 bills that were taken in the robbery, the only difference in denominations was two fewer $10 bills and five fewer $1 bills.

10
11
12

Given the overwhelming case against defendant, it is simply inconceivable that the prosecutor's comments, either singly or cumulatively, contributed to the verdict.  Hence, any misconduct was harmless beyond a reasonable doubt.

13   (Opinion at 9-10.)  Under the circumstances of this case, petitioner has failed to demonstrate that

14   the prosecutor's comments so infected his trial with unfairness as to make the resulting

15   conviction a denial of due process.  Accordingly, petitioner is not entitled to relief on this claim.[9]

16        D.   Right to an Impartial Jury (claim eight)

17              In his next claim, petitioner argues that his right to due process and equal

18   protection were violated because his jury "did not represent a cross-section of the community."

19   (Pet. at consecutive p. 7.)  Petitioner states that there were no African-Americans on the jury that

20   convicted him, and he argues that "he is entitled to a jury of his own peers."  (P&A at 56.)  He

21   explains:

22   /////

23

24        [9]  Petitioner claims that "the Court had a duty to give the jury any curative instruction on the prosecutor comment, and that counsel should have requested the curative and because he didn't he was ineffective."  (P&A at 53.)  In light of the fact that the trial judge corrected the prosecutor's remarks in the jury's presence, petitioner has failed to demonstrate that the lack of a curative instruction with regard to the prosecutor's comments rendered his trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief.

1

2

3

4

5

6

> Petitioner contends it is the duty to both the Court and the officer of the District Attorney that there is a fair representation of cross-section of the community, especially in this case when the petitioner is an African-American, as stated above, the list to gather potential jurors is huge and worthy of examination as to why petitioner had no African-Americans on his jury.
>
> Had petitioner been provided with a source list he may have shown discrimination to exclude African-Americans off the "qualified jury list."

7   (Id. at 58.)  Petitioner also argues that if his trial and appellate counsel had conducted an

8   adequate investigation into the makeup of the jury that convicted him, they might have

9   discovered that the prosecutor improperly excused one or more potential jurors on the basis of

10  race.  In this regard, petitioner argues that:

11

12

13

14

> had there been African-Americans on the jury they would expect that the protocol and chain of custody would have been properly done, for this is the officer's job to ensure everything is done by the books and because they did not follow the rules and laws in this case, that there may be reasonable doubt, and vote not to convict petitioner.

15  (Id. at 57.)  In essence, petitioner appears to be claiming that African-American jurors would

16  have been more likely to vote for acquittal because of the allegedly substandard police

17  investigatory work in this case.

18          Petitioner's speculation that an investigation into the composition of his jury

19  and/or the jury selection process may have uncovered improprieties in jury selection is

20  insufficient to establish a constitutional violation.  Petitioner has not provided any factual basis

21  for his claim that his jury was improperly constituted.  Accordingly, he is not entitled to relief on

22  his claims that the jury selection process was constitutional deficient or that his trial or appellate

23  counsel rendered ineffective assistance in failing to conduct the necessary investigation to fully

24  explore this issue.  See Cooks v. Spalding, 660 F.2d 738, 740 (9th Cir. 1981) (mere speculation

25  is insufficient to demonstrate prejudice).

26  /////

E.  Ineffective Assistance of Appellate Counsel (claim six)

Petitioner's next claim is that his appellate counsel rendered ineffective assistance by failing to raise on appeal all of the claims contained in the instant petition and by failing to "request reporter's transcripts of jury selections to investigate the facts and law surrounding exclusion of African American jurors from the venire panel and striking of minority members during jury selection."  (Pet. at consecutive p 6; Traverse at 30.)  Petitioner states that "the record had no voir dire transcripts nor a complete list of the jury pool to reflect the actual representation and percentage of African-Americans."  (P&A at 57.)

The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal.  Id. at 1434 n.9.

The court has concluded that the claims raised in the instant petition lack merit.  Accordingly, petitioner's appellate counsel did not render ineffective assistance by failing to raise those issues on appeal.  Further, as explained above, petitioner's argument that a claim of jury

1   bias may have had merit if it had been fully investigated by trial or appellate counsel is based on

2   pure speculation and cannot provide the basis for habeas corpus relief.  Accordingly, these claims

3   will be rejected as well.

4                         F.  <u>Request for Evidentiary Hearing</u>

5             On May 28, 2008, petitioner filed a request for an evidentiary hearing.  He argues

6   that a hearing is necessary to develop the facts with regard to virtually all of the claims raised in

7   the instant petition.  (Mot. for Evidentiary Hr'g at 2-10.)  In his traverse, petitioner requests an

8   evidentiary hearing and/or to supplement the record with respect to several of his claims.

9   Specifically, he requests: (1) "a discovery order, and or, an evidentiary hearing to take testimony

10  and subpoena officer files" in connection with his claim that his trial counsel rendered ineffective

11  assistance in failing to file a <u>Pitchess</u> motion; (2) discovery and an evidentiary hearing regarding

12  the "policy and procedures used by Chico Police to collect and preserve fingerprint evidence," in

13  support of his claim that his trial counsel rendered ineffective assistance in failing to challenge

14  the chain of custody of the cash confiscated from him at the scene of his detention; and (3)

15  "discovery and production of the transcripts from jury selection" to develop his claim of juror

16  bias and improper jury selection.  (Traverse at 20, 24, 31.)

17           Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under

18  the following circumstances:

19          (e)(2) If the applicant has failed to develop the factual basis of a
        claim in State court proceedings, the court shall not hold an
20          evidentiary hearing on the claim unless the applicant shows that-

21                  (A) the claim relies on-

22                  (i) a new rule of constitutional law, made retroactive to cases on
                collateral review by the Supreme Court, that was previously
23                  unavailable; or

24                  (ii) a factual predicate that could not have been previously
                discovered through the exercise of due diligence; and
25

26                  (B) the facts underlying the claim would be sufficient to establish
                by clear and convincing evidence that but for constitutional error,

1    no reasonable fact finder would have found the applicant guilty of
     the underlying offense[.]

2

3          Under this statutory scheme, a district court presented with a request for an

4    evidentiary hearing must first determine whether a factual basis exists in the record to support a

5    petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v.

6    Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166

7    (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner

8    requesting an evidentiary hearing must also demonstrate that he has a "colorable claim for relief."

9    Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670; Stankewitz v. Woodford, 365 F.3d

10   706, 708 (9th Cir. 2004); and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show

11   that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

12   entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

13   marks and citation omitted).

14         For the reasons described above, petitioner's claims regarding trial counsel's

15   failure to bring a Pitchess motion, failure to challenge the chain of custody of the cash

16   confiscated from him at the time of his arrest for the purpose of establishing that the police may

17   have stolen some of the money recovered from him, and failure to challenge the jury selection

18   process, are all based on speculation and are therefore not "colorable." These claims are not

19   supported by specific facts suggesting a constitutional violation. Accordingly, neither an

20   evidentiary hearing nor expansion of the record is appropriate. With respect to petitioner's other

21   claims, the court concludes that no additional factual supplementation is necessary and that an

22   evidentiary hearing is not appropriate with respect to those claims. The facts alleged in support

23   of these claims, even if established at a hearing, would not entitle petitioner to relief. Therefore,

24   petitioner's request for an evidentiary hearing will be denied.

25   /////

26   /////

41

G.  <u>Request for Leave to Conduct Discovery</u>

During the course of these proceedings, petitioner filed a motion to expand the record to include California State Bar records concerning his trial counsel, Grady Davis, and Leo Barone, the prosecutor in this case.  Petitioner also filed a request for the court to take judicial notice of these documents.  (<u>See</u> Mot. for Leave to Expand the Record and Req. for Judicial Notice, filed May 28, 2008.)  The records attached to petitioner's motions reflected that both attorneys were suspended from the practice of law for misconduct.  Petitioner's motions to expand the record and for judicial notice were denied on the grounds that petitioner failed to:  (1) demonstrate why the state bar records were relevant to the merits of his petition or to the resolution of his prosecutorial misconduct and ineffective assistance of counsel claims, and (2) how the conduct of Attorney Barnes and Attorney Davis which resulted in their suspensions from the practice of law had any adverse affect on petitioner's criminal proceedings.  (<u>See</u> order dated February 4, 2009.)

On June 8, 2009, petitioner filed a motion for leave to conduct discovery.  Therein, petitioner requests permission to conduct discovery in order to obtain information that may be relevant to the claims raised in the instant petition and/or that will permit him to develop the facts he intends to present at an evidentiary hearing.  (Disc. Mot. at 4-10.)  Petitioner also requests discovery in order to show how the State Bar records of attorneys Davis and Barone are relevant to the claims contained in the instant petition.  (<u>Id.</u> at 10-11.)  He argues that the reasons for the suspension of these attorneys by the State Bar are or may be similar to their alleged failings or misconduct in his case.  (<u>Id.</u> at 14-15, 17-18.)

Petitioner has lodged a set of interrogatories and a request for production of documents that he wishes to serve on respondent.  (Exs. C and D to Decl. of Elliott Lamont Rogers in Supp. of Pet'r's Mot. for Leave to Conduct Disc. (hereinafter Pet'r's Decl.)).  The proposed interrogatories request general information supporting the substance of all of the allegations and arguments in respondent's Answer.  They also request information regarding the

1 production of evidence at any evidentiary hearing on petitioner's claims. (Ex. C to Pet'r's Decl.)

2 The request for production of documents seeks State Bar records of prosecutor Barone and trial

3 counsel Davis in order to support petitioner's claims of ineffective assistance of counsel and

4 prosecutorial misconduct.  (Ex. D to Pet'rs Decl.)  These State Bar records were also the subject

5 of petitioner's Motion for Leave to Expand the Record and Request for Judicial Notice,

6 described above.  The request for production also seeks from respondent all documents that may

7 be relevant to the claims raised in the instant petition.  (Id.)

8          Rule 6 of the Rules Governing Section 2254 Cases in the United States District

9 Courts permits discovery in habeas corpus actions.  A habeas petitioner does not enjoy the

10 presumptive entitlement to discovery of a traditional civil litigant and discovery is available only

11 in the discretion of the court and for good cause shown.  See Rules Governing Section 2254

12 Cases, Rule 6(a) 28 U.S.C. foll. § 2254; Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999).

13 See also Hayes v. Woodford, 301 F.3d 1054, 1065 n.6 (9th Cir. 2002) (discovery is available

14 "only in the discretion of the court and for good cause").

15          After a review of the record and petitioner's claims, the court does not find good

16 cause for an order granting the discovery petitioner seeks.  Petitioner's proposed interrogatories

17 and request for production of documents are overbroad and essentially constitute a fishing

18 expedition.  In any event, as explained above, no factual supplementation of petitioner's claims is

19 necessary for resolution of the claims raised by petitioner in the instant petition.

20          Although the court will deny petitioner's motion for discovery, the court has

21 considered the information filed by petitioner in connection with the State Bar suspensions of

22  attorneys Barone and Davis.  The fact that these attorneys were suspended because of their

23 conduct in cases unrelated to this one does not change the court's conclusion that trial attorney

24 Davis did not render prejudicial ineffective assistance on petitioner's behalf and that attorney

25 Barone did not engage in prejudicial prosecutorial misconduct in this case so as to entitle

26 /////

43

1   petitioner to habeas relief.[10]  As explained above, none of the alleged improprieties by attorneys

2   Barone and Davis resulted in prejudice to petitioner in light of the evidence introduced at

3   petitioner's trial.  Nor is there evidence that attorneys Barone and Davis engaged in misconduct

4   in this case.  Even if the actions of those attorneys in other cases resulted in their suspension,

5   petitioner has failed to demonstrate that he is entitled to relief on his claims of ineffective

6   assistance of counsel or prosecutorial misconduct in this case.

7                                    CONCLUSION

8            Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

9            1.  Petitioner's May 28, 2008 Request for Evidentiary Hearing (Doc. No. 29) is

10   denied;

11           2.  Petitioner's June 8, 2009 Motion for Leave to Conduct Discovery (Doc. No.

12   40) is denied;

13           3.  Respondent's June 22, 2009 Request for Enlargement of Time to File

14   Opposition to Petitioner's Discovery Motions (Doc. No. 42) is denied as unnecessary; and

15           4.  Petitioner's amended application for a writ of habeas corpus (Doc. No. 11 ) is

16   denied.

17   DATED: June 22, 2009.

18

19                                            _Dale A. Drozd_

20   DAD:8                              DALE A. DROZD
     rogers1395.hc                      UNITED STATES MAGISTRATE JUDGE

21

22           [10]  Those State Bar records indicate that petitioner's trial attorney had an actual thirty day
     suspension imposed by the State Bar effective March 11, 2001, for representing conflicting
23   interests, and an actual three year suspension imposed on January 10, 2003, for not providing
     competent assistance or refunding unearned fees in five matters and for violating a court order.
24   Petitioner's trial attorney was not under suspension at the time of petitioner's trial which
     commenced April 23, 2001 and concluded on May 10, 2001.  The State Bar records submitted by
25   petitioner also reflect that effective February 3, 2006, the prosecutor in his case received a one-
     year actual suspension from the State Bar for failing to disclose exculpatory evidence to the
26   defense in a criminal prosecution.

                                              44